```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                       FORT MYERS DIVISION
```

RUSSELL ARBIN ROGERS,

                    Plaintiff,

vs.                                         Case No. 2:07-cv-322-FtM-29SPC

SGT. FNU ULUM and C/O FNU PIGNATURE,

                    Defendants.
_____

## **OPINION AND ORDER**

### **I.**

This matter comes before the Court upon review of the Motion for Summary Judgment (Doc. #75, Mot. SJ.) filed on behalf of Defendants Ulum and Pignature. In support of the motion, Defendants submit: depositions of five inmate witnesses, the deposition of Plaintiff, and the deposition of Plaintiff's cellmate (Docs. #64-2-#69-2); affidavits from Sergeant Ulum, Officer Pignature, Chief of Security James Upchurch (Exhs. 1-5); Incident Reports written the day of the incident by Officers Pignature, Ulum, Cook, Love, Young, and Battle (Doc. #73-2); and the Investigation Report submitted by the Secretary of the Florida Department of Corrections (Doc. #74-2).

Plaintiff filed a Response (Doc. #77, Response) in opposition to the motion and attached duplicative copies of inmate affidavits, who were witnesses, which were attached to the Complaint; an

affidavit submitted by himself and one from his cellmate. This matter is ripe for review.

**II.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id. The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004). If there is a conflict in the evidence the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. Shotz v. City of Plantation, Fl., 344 F.3d 1161, 1164 (11th Cir. 2003). Conclusory allegations based on subjective beliefs, however, are insufficient to create a genuine issue of material fact. Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000). In the summary judgment context, the Court must construe *pro se* pleadings more liberally than those of a party represented

by an attorney. Loren v. Sasser, 309 F.3d 1296, 1301 (11th Cir. 2002). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" Id. (citations omitted). Additionally, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Burger King Corp. v. Weaver, 169 F.3d 1310, 1321 (11th Cir. 1999)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

### III.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. Marsh, 268 F.3d at 1059; Swint v. City of Wadley, 51 F.3d 988 (11th Cir. 1995); Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994). A defendant who occupies a supervisory position may not be held liable under a theory of *respondeat superior* in a § 1983 action. Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690-

692 (1978); Quinn v. Monroe County, 330 F.3d 1320, 1325 (11th Cir. 2003); Farrow v. West, 320 F.3d 1235 (11th Cir. 2003). It is undisputed that the Defendants are state actors.

Plaintiff is proceeding on his Amended Complaint (Doc. #20, Amended Complaint), which alleges an Eighth Amendment claim stemming from a July 20, 2006 attack on Plaintiff's by his cellmate[1] at Charlotte Correctional Institution. See generally Complaint. The Supreme Court made clear that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). Not every injury that an inmate suffers at the hands of another inmate "translates into a constitutional liability." Id. at 834. Rather, when an prison official's deliberate indifference to a substantial risk of harm to an inmate rises to a violation of the Eighth Amendment. Id. at 828. "Deliberate indifference is not the same thing as negligence or carelessness." Maldonado v. Snead, 168 Fed. Appx. 373 (11th Cir. 2006)(citing Ray v. Foltz, 370 F.3d 1079, 1083 (11th Cir. 2004)). "Merely negligent failure to protect" an inmate from an attack does not give rise to a § 1983 claim. Carter, 352 F.3d at 1350.

A plaintiff must demonstrate that the defendant was aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists and that the prison

---

[1] The inmate who roomed with Plaintiff and who was involved in the incident is named James Campbell (hereinafter "cellmate").

official drew that inference. Purcell v. Toombs County, GA., 400 F.3d 1313, 1319-20; Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003). In other words, to show that an official had subjective knowledge, the court is to inquire whether the defendant was aware of a "particularized threat or fear felt by [the plaintiff]." Carter, 352 F.3d at 1350. "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment" and does not give rise to a constitutional violation. Farmer, 511 U.S. at 838. Whether an official had requisite knowledge is a question of fact that may be demonstrated by circumstantial evidence. Id. at 842. Consequently, evidence of past attacks which were "long-standing, pervasive, well-documented, or expressly noted by [ ] officials in the past" may be sufficient to find that the official had actual knowledge. Id. However, general knowledge that a particular inmate is a problem inmate with a well-documented history of prison disobedience who is prone to violence is not sufficient. Carter, 352 F.3d at 1349. See also McBride v. Rivers, 170 Fed. Appx. 648 (11th Cir. 2006).

**IV.**

Defendants move for summary judgment arguing that there remains no issue of material fact and they are entitled to judgment as a matter of law. See generally Mot. SJ. Defendants contend that Plaintiff has not shown that the Defendants subjectively knew

of a substantial risk of serious harm to the Plaintiff, or that either Defendant knowingly and recklessly disregarded that risk by failing to take reasonable measures to abate it. Id. at 8-9. In the alternative, Defendants submit that they are entitled to qualified immunity. Id. at 10-14.

In Response, Plaintiff attacks what he perceives to be inconsistencies in the record, such as, Defendant Ulum's affidavit that states Ulum arrived after the fight began between Plaintiff and his cellmate. Response at 8. Plaintiff argues that other inmates, who were witnesses, establish that both Defendants were present at the cell when the fight began. Id. Plaintiff also argues that the Defendants' "response after 5-10 minutes to 'mace' both plaintiff and [his] cellmate was unreasonable when plaintiff was already handcuffed, and the (3) officers present was [sic] more than adequate enough to subdue a single unrestrained inmate/ 'Campbell'." Id. at 9.

**V.**

The record establishes the following undisputed facts, which are construed in the light most favorable to Plaintiff: Prior to the July 20, 2006 altercation, Plaintiff and his cellmate lived together for approximately one week without incident. On July 20, about fifteen minutes prior to the altercation at issue, Plaintiff's cellmate told Defendant Pignature that he was in fear of his life because of Plaintiff. Complaint at 8; Mot. SJ. at 3. Approximately five to ten minutes later, officer Pignature came to

the cell to escort the cell occupants to the showers. Complaint at 9; Mot. SJ. at 3. Because Plaintiff was closest to the cell door, he "cuffed up" first. Id. After Plaintiff had the handcuffs on, his cellmate attacked him. Id. Defendant Pignature issued several verbal orders to the cellmate to stop attacking Plaintiff. Plaintiff's cellmate did not comply and Pignature called other officers for assistance. Defendant Ulum arrived at the cell at 10:56 p.m. and also verbally ordered Campbell to cease the attack. When Campbell continued to attack Plaintiff, Defendant Ulum authorized Defendant Pignature to spray chemical agents into the cell in order to stop the altercation. At some point, other officers arrived at the cell after being called for assistance. The cellmate did not stop attacking Plaintiff, so a second spray of chemical agents were utilized. Complaint at 10; Mot. SJ. at 4. The attack stopped at 11:09 p.m. and the officers entered the cell to escort the prisoners to the showers for decontamination and to the medical department for evaluation. Complaint at 10; Mot. SJ. at 6. The entire ordeal lasted for approximately approximately ten to fifteen minutes. Plaintiff's cellmate was written a disciplinary report, found guilty, and placed on CM-I status. Complaint at 11.

The material facts that Plaintiff disputes, but the record establishes are undisputed, are as follows: The Complaint alleges that Plaintiff's cellmate requests to be moved were denied "several times." Complaint at 9. However, the testimony provided during depositions by Plaintiff and Campbell establishes that Campbell had

made only one request to be moved approximately 5-15 minutes prior to the altercation. See Doc. #64-2 at 23, 26; Doc. # 63-2 at 9. The Complaint alleges that Ulum and Pignature stood "idly by" for 10-15 minutes and Ulum stated, "thats [sic] all you got, you going to C-M I anyways." Complaint at 10. However, the record establishes without contradiction that Defendant Pignature did not stand idly by, but issued several verbal commands to stop fighting, called for assistance from other officers, and finally employed the use of chemical agents to stop the fight. Defendants cite to numerous supporting exhibits that establish that the inmate witnesses heard officer Pignature and Ulum verbally order Campbell to stop attacking Plaintiff. Mot. SJ. at 7. Even Campbell himself admits that he heard the verbal commands from Pignature to stop fighting. Id. And, after reviewing a videotape, the inspector general determined that Pignature had ordered Plaintiff's cellmate to stop attacking Plaintiff.

Based on the record evidence, the Court finds that the Defendants are entitled to the entry of judgment in their favor as a matter of law. The record contains no evidence that Defendants were aware of specific facts from which an inference could be drawn that a substantial risk of serious harm existed. Plaintiff and his cellmate had lived together for a week, during which they encountered no altercations. At most, Defendant Pignature learned Plaintiff's cellmate, not Plaintiff, was in potential harms way, but then only learned that information fifteen minutes prior

to the altercation. Thus, neither Defendant could have drawn the inference that Plaintiff faced a substantial risk of serious harm when it was the cellmate who reported being in fear. Further, the timing of the incident and the cellmate's complaint to Pignature was, at most, fifteen minutes. There are no allegations that either Plaintiff or Campbell were "problem" inmates, or had a history of altercations with their cellmates. Plaintiff never complained of being afraid of Campbell, and, in fact, acknowledges that he is larger in stature than Campbell.

Instead, Plaintiff argues that the Defendants' response to the situation was "unreasonable." Response at 9. Plaintiff appears to attribute liability on the Defendants for their failure to immediately enter the cell during the attack to subdue his cellmate in their close management cell. Id. However, when a prison's internal safety is of concern, as alleged in the action *sub judice*, courts conduct a more deferential review of the prison officials' actions. Williams v. Burton, 943 F.2d 1572, 1575 (11th Cir. 1991)(citations omitted). Defendants cite the applicable policy set forth by the Florida Department of Corrections in handling these situations. See Doc. #72-2. An officer's decision to breach a cell door when one cell occupant is unrestrained and assaulting the other "must be carefully considered particularly when the inmates are in close management. Discretion is afforded to officers in making this decision as described in the following excerpts . . . . ." Id. at 2. Pursuant to policy, "[o]fficers

intervening physically by breaching a cell door prior to the arrival of sufficient back up staff are subject to potentially life threatening injury. Generally, officers entering cells occupied by unrestrained close management inmates do so only in organized teams of five officers who are fully outfitted with protective gear to prevent injury." Id. at 3. Plaintiff, however, contends that the three officers present at the cell "was more than adequate enough to subdue a single unrestrained inmate." Response at 9. Plaintiff's contentions are contrary to the department's policy and reflect only his personal opinion. Had Defendant Pignature taken the actions Plaintiff suggests, his actions would have been contrary to the policy and the officers own life would have been placed in jeopardy. In this case, the record evidence supports the finding that the Defendant(s) immediately evaluated the situation and determined that the use of chemical agents was the proper method to gain control of the situation. To the extent Plaintiff complains in his Response that he also suffered from the side effects of the chemical agents, the application of chemical agents was done in order to restore order and subdue Plaintiff's cellmate from continuing the attack on Plaintiff. Ort v. White, 813 F.2d 318, 324-325 (11th Cir. 1987). The Court must look at the "totality of the circumstances: not just a small slice of the acts that happened at the tail of the story." Garrett v. Athens-Clarke County, Ga., 378 F.3d 1274, 1281 (11th Cir. 2004). As a matter of law, the Court finds that the Defendants did not violate

Plaintiff's Eighth Amendment rights. Because the Court finds no constitutional violation, the Court need not address Defendants' argument that they are entitled to qualified immunity. Based on the foregoing, the Court grants the Defendants' Motion for Summary Judgment.

ACCORDINGLY, it is hereby

**ORDERED:**

1. Defendants' Motion for Summary Judgment (Doc. #75) is **GRANTED** and this action is **DISMISSED** with prejudice.

2. To the extent Plaintiff sought summary judgment in his favor, the motion is **DENIED.**

3. The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this ___19th___ day of May, 2009.

_____
JOHN E. STEELE
United States District Judge


SA: alj
Copies: All Parties of Record